**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT JACKSON, | Case No.: 2:16-cv-00995-APG-NJK |
| Plaintiff | **Order (1) Granting in Part Defendants' Motion for Summary Judgment and (2) Granting in Part Plaintiff's Motion for Summary Judgment** |
| v. | |
| STATE OF NEVADA, et al., | [ECF Nos. 91, 93] |
| Defendants | |

Plaintiff Robert Jackson alleges various civil rights violations stemming from being deprived of a vegan diet in accordance with his religious beliefs as a Moorish Scientist while in the custody of the Nevada Department of Corrections (NDOC) at High Desert State Prison (HDSP) and Ely State Prison (ESP). Jackson sues defendants NDOC deputy director McDaniel, HDSP Warden Neven, HDSP Associate Warden Nash, ESP Warden Baker, ESP Associate Warden Byrne, and HDSP food services manager Duane Wilson. Jackson alleges that HDSP Associate Warden Stroud (who is not a defendant) approved him for a vegan diet, but he was instead placed on a no-meat diet which contained animal products like eggs and cheese. Despite various attempts through the grievance process to be placed on a vegan diet, including during his transfers from HDSP to ESP and back to HDSP, Jackson remained on a non-vegan diet that he alleges was nutritionally inadequate from March 2015 until December 2017. In December 2017, HDSP approved Jackson for a special common fare vegetarian diet that Associate Warden Nash believes complies with the vegan diet.

After I screened Jackson's complaint, the following claims were able to proceed: 1) First Amendment free exercise of religion violation; 2) Fourteenth Amendment equal protection clause violation; 3) violation of the Eighth Amendment right to be free from cruel and unusual

punishment; and 4) Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) violation.

The parties now move for summary judgment on all counts. Jackson argues the defendants violated the Eighth Amendment when they failed to provide a nutritionally adequate diet and later placed him on an unapproved modified vegetarian common fare diet. He argues the defendants violated the First Amendment and RLUIPA by failing to accommodate his religious diet and substantially burdening his right to religious exercise without a compelling interest or legitimate penological interest. And he argues there is no genuine dispute that NDOC created a system that treats inmates with religious dietary needs differently based on the type of religion, in violation of the equal protection clause.

The defendants argue that Jackson's equal protection and free exercise claims fail because they did not personally participate in the decision to deny Jackson's request for a religious diet. They argue they are entitled to summary judgment on the Eighth Amendment claim because they were unaware of any substantial risk to Jackson's health by placing him on the no-meat diet. In addition, the defendants argue that Jackson's RLUIPA claim for injunctive relief is moot because Jackson is now receiving a vegan diet. They also argue that Jackson has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (PLRA). Finally, the defendants argue they are entitled to qualified immunity.

As detailed below, I grant the defendants' motion for summary judgment in part and I grant Jackson's motion for summary judgment in part.

**I. BACKGROUND**

NDOC's grievance process is governed by Administrative Regulation 740. ECF No. 94-19. There are three levels to the process: an informal grievance, first level grievance, and second

level grievance. *Id.* at 5-10. "The Associate Warden (AW) shall be responsible in managing the grievance process at each institution and any facilities under the control of the parent institution. The AW may designate an Inmate Grievance Coordinator to conduct functions required by this regulation." ECF No. 92 at 188. A first level grievance "should be reviewed, investigated and responded to by the Warden at the institution where the incident being grieved occurred." ECF No. 92 at 194. But the Warden "may utilize any staff in the development of a grievance response." *Id.* Second level grievances regarding religious operations should be reviewed and responded to by the deputy directors. ECF No. 92 at 195. "Inmates transferred to another institution pending the resolution of a filed grievance shall have the grievance completed at the sending institution at all levels." ECF No. 92 at 199. Finally, the "Warden is responsible for the implementation and monitoring of regulations regarding the inmate Common Fare, Religious/Spiritual diet." ECF No. 92 at 165.

Jackson arrived at HDSP around March 11, 2015. ECF Nos. 91 at 3; 93 at 2. On March 26, 2015, Jackson submitted an inmate request form stating, "In accord with my religious-cultural customs I am a 'Vegan' and do not consume any meat products." ECF No. 94-14 at 2. Associate Warden Stroud approved the form. *Id.*; ECF No. 92 at 7. On April 13, 2015, Jackson filed an inmate request form directed to the culinary director, stating he was approved for a vegan diet (explaining that vegan meant no meat or dairy products), but had yet to receive it and requesting to be added to the diet tray list. ECF No. 94-12 at 3. A non-defendant HDSP employee approved the form. *Id.* On May 18, 2015, Jackson submitted another inmate request form inquiring whether HDSP had a vegan diet and whether the diet he was receiving was nutritionally adequate. ECF No. 92 at 11. Wilson, HDSP's food services manager, responded

that HDSP did not have a vegan diet and that inmates seeking a no-meat diet should request one through Associate Warden Stroud. *Id.*

In June 2015, Jackson submitted a religious diet accommodation request form seeking to be placed on the common fare menu because it was "the closest thing" to accommodate his religious vegan diet. ECF No. 94-16 at 7. Chaplain Calderin denied Jackson's request, stating only that the "inmate does not qualify for common fare." *Id.* at 9. Chaplain Calderin is not a defendant in this case and the parties have provided no additional evidence to explain what factors went into the decision to deny Jackson's request. Associate Warden Stroud affirmed the denial. ECF No. 92 at 8.

Jackson initiated the grievance process (grievance 0776) on September 9, 2015, requesting to be placed on a vegan diet in accordance with his religion. ECF No. 94-20 at 9-10. HDSP Associate Warden Nash and Warden Neven responded to different levels of this grievance stating that HDSP did not have a vegan diet and that Jackson was placed on the alternative no-meat diet. *See id.* But before Jackson received the response to the first level grievance, he was transferred to ESP, where he re-initiated the first level grievance and submitted a second level grievance, both for grievance 0776. ECF No. 94-20 at 2-5, 17. ESP Associate Warden Byrne denied the first level grievance as procedurally improper because Jackson had already received a response from HDSP at the first level. *Id.* at 2. The defendants contend Jackson did not submit a second level grievance, but the record shows Jackson submitted a second level grievance on or about October 22, 2015 while he was at ESP. *Id.* at 17. The grievance was denied, noting only "Doc 3098" as a response, which means that Jackson's grievance was procedurally improper in some way. However, the Doc 3098 that would have provided the reason for denying the grievance is not included in the evidence. *Id.*

4

It appears that while Jackson was waiting for a response to grievance 0776, he filed an informal grievance (grievance 0238) at ESP on October 11, 2015, seeking a religious accommodation vegan diet. ECF No. 94-21 at 9. ESP Associate Warden Byrne rejected the grievance on procedural grounds, noting that Jackson already grieved this claim in grievance 0776. ECF No. 92 at 57. ESP Warden Baker rejected Jackson's first level grievance twice on procedural grounds. *Id.* at 59, 61, 63. Jackson continued to the second level grievance, which ESP Warden Baker rejected on January 11, 2016 on procedural grounds. *Id.* at 67.

Meanwhile, Jackson filed a third grievance (grievance 1498) on October 25, 2015 while at ESP, complaining that he was given white rice as a main course on numerous occasions with no alternative protein source and noting that he is on his diet for spiritual and cultural reasons. ECF No. 94-22 at 6. Neither party provides evidence of the response to this informal grievance. Jackson filed a first level grievance on November 25, 2015, which Warden Baker rejected on procedural grounds. *Id.* at 4. Jackson continued to the second level grievance, which Associate Warden Byrne rejected on procedural grounds in February 2016. *Id.* at 2. However, Jackson had already returned to HDSP by the time Associate Warden Byrne responded to this second level grievance. ECF No. 94-23 at 3 (noting that Jackson returned to HDSP on January 20, 2016).

Jackson initiated his final grievance relevant to this action (grievance 5826) on January 21, 2016, the day after returning to HDSP. *Id.* The grievance addressed several issues, one of which was that he was served only lettuce and did not receive a proper meal for dinner. *Id.* at 5-6. A non-defendant HDSP employee responded that Jackson was on the alternative meal since November 2015 and that any error was an oversight. *Id.* at 4. Jackson continued to the first level, explaining for the first time in this grievance that he was previously approved for the religious accommodation vegan diet which he had yet to receive despite his attempts to resolve the issue

through the grievance system. *Id.* at 7-8.  A non-defendant HDSP employee responded that Jackson was answered appropriately at the informal level, that Jackson was inappropriately grieving the same issue, and that Jackson was approved for the no-meat diet. *Id.* at 12.  Jackson filed a second level grievance, which a non-defendant HDSP employee responded to on April 15, 2016, stating "in researching your claim, you are currently on the no meat diet per AW Stroud." *Id.* at 11.

Jackson initiated this action on May 2, 2016. ECF No. 1-1.  While he was participating in the court's inmate early mediation program, Jackson also filed a DOC 3505 Request for Accommodation of Religious Practices form, asking NDOC to create a vegan common fare diet. ECF No. 92 at 109.  The NDOC Religious Review Team responded to Jackson's request on April 12, 2017. *Id.* at 111.  Chaplain Snyder (who is not a defendant) stated, "Followers of the Moorish Science Temple of America are currently eligible for an alternative meatless diet.  Your request appears to be a personal preference.  Your request is denied." *Id.*

In October 2017, Associate Warden Nash sent an email to defendant Wilson and a non-defendant employee asking if HDSP could implement a vegan diet tray similar to one she found at Northern Nevada Correctional Center (NNCC). ECF No. 94-17 at 2-3.  On December 12, 2017, HDSP staff, at the request of Associate Warden Nash, placed Jackson on a special common fare vegetarian or Hindu diet. ECF Nos. 92 at 8-9; 94-18 at 9-10; 94-25 at 2.  The diet uses allergy restrictions to substitute plant-based foods for animal products that are normally provided as part of the common fare diet. ECF No. 92 at 8-9.  However, to date NDOC has not approved a vegan diet for inmates in its facilities. *See* ECF No. 94-30 at 2 (email from Duane Wilson to Michelle Ashcraft noting that HDSP created "a menu to serve inmate Jackson that is not official" and seeking direction from NDOC to provide an approved diet).

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008). "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Wash.*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citation omitted).

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion of administrative remedies prior to filing a lawsuit is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc).  "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  That means the inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).  The inmate thus must comply "with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  "[A] prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement." *Griffin*, 557 F.3d at 1120 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).  "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.*

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Consequently, the defendants bear the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino*, 747 F.3d at 1172. If the defendants do so, then the burden shifts to the inmate to show "there is something in his particular case that made the

existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted). The defendants bear the "ultimate burden" of proving a failure to exhaust. *Id.*

Both parties have identified four grievances Jackson filed related to the issues raised in his complaint. *See* ECF Nos. 91 at 5-8; 93 at 8-10 (identifying grievance numbers 2006400776 (0776), 2006301238 (1238), 20063011498 (1498), and 20063015826 (5826)). The defendants argue that grievance 0776 was not properly exhausted because Jackson failed to submit a second level grievance. ECF No. 91 at 21. They argue grievances 1238 and 1498 were rejected for procedural defects, not on the merits, so Jackson failed to raise the substance of the claims asserted in his complaint in the grievances. *Id.* at 21-22. The defendants argue grievance 5826 was not properly exhausted, despite merits responses at each level, because Jackson failed to discuss the vegan diet at the informal grievance stage and raised the issue for the first time at the first level stage. *Id.* at 22. They also argue Jackson did not fairly raise the substance of his constitutional and RLUIPA claims, so he failed to exhaust his administrative remedies as to any claim. *Id.*

Jackson responds that the defendants rejected grievances for "alleged minor procedural deficiencies" and that there was no relief truly available through the grievance process. ECF No. 98 at 19. Jackson argues the defendants admit that grievance 5826 received merits responses at each level and cite to no authority to suggest that that the PLRA requires each cause of action pleaded in a complaint to be first grieved under prison grievance procedures. *Id.* Jackson also argues that by responding to his first and second level grievances in 5826, they accepted the new information provided instead of denying the grievance based on procedural grounds as they had

done in the past. *Id.* Thus, Jackson argues exhaustion was satisfied or at least genuine issues remain as to whether exhaustion was satisfied as to grievance 5826. *Id.* at 19-20.

Viewing the evidence in the light most favorable to Jackson, the defendants have met their burden to show that grievance numbers 7776, 0238, and 1498 were not properly exhausted. Jackson argues these grievances were intended to give prison staff the opportunity to address the issue of his religious diet and the nutritional adequacy of the diets, but inmates must follow the prison's procedural rules. While the grievance process may be challenging at times, Jackson presents no evidence that prison staff impeded his ability to refile the grievances that were dismissed on procedural grounds or any other reason he could not complete the exhaustion requirement.

However, the defendants have not met their burden of proving a failure to exhaust as to grievance 5826. Jackson filed grievance 5826 upon returning to HDSP. He complained of several issues at the informal level, one of which was that he was denied a proper meal at dinner and served only lettuce. At the first and second level, Jackson explained that he needed to be on a vegan diet for religious reasons. While the defendants argue that Jackson did not properly provide information about his religious accommodation diet request at the informal level, they point to no authority to suggest that an inmate's grievance is not properly exhausted when officials respond to new information at the first and second levels. And the Ninth Circuit has held that an inmate properly exhausts administrative remedies "despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016). Here, Jackson received merits responses at each level of the grievance process regarding his request for a vegan diet, even if he did not mention his request

for a vegan diet at the informal level and the grievance contained issues not relevant to the present complaint. *See* ECF No. 94-23.

The defendants also have not shown that Jackson's grievance was not sufficiently detailed according to prison regulation or the PLRA.  They argue Jackson did not allege the substance of his claims in the grievance, but nothing in Administrative Regulation 740 requires the level of detail they seek and the Ninth Circuit has held that grievances do not need to include legal terminology or theories or contain every fact necessary to prove the elements of an eventual legal claim. *Griffin*, 557 F.3d at 1120.

Administrative Regulation 740 specifies that grievances should provide documentation and factual allegations and should also include the remedy sought. *See* ECF No. 94-19 at 7. While the regulation does not speak directly to whether specific constitutional violations must be included, Jackson's grievances are sufficient to "alert[] the prison to the nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120.  Jackson explained that AW Stroud approved his request for a religious accommodation vegan diet, but he was placed on the no-meat diet, and that he sought to be placed on a vegan diet.  Thus, Jackson's claims under RLUIPA and the First Amendment were properly exhausted.

However, grievance 5826 makes no mention of either the nutritional adequacy of the no-meat and vegan diets or that he was being discriminated against because of his religion.[1]  An inmate must exhaust every claim considered in federal court. *Jones*, 549 U.S. at 220.  If a claim is not properly exhausted, the court may dismiss that claim and proceed with the claims that were properly exhausted. *Id.* at 221.  Here, the defendants were not alerted to Jackson's alleged

---

[1] The only mention of nutritional adequacy does not make it clear that Jackson believes the no-meat diet is nutritionally inadequate. *See* ECF No. 92 at 79 ("If I consume this lettuce they will claim I ate my dinner and refuse to send me a nutritionally adequate main course.").

concerns about the nutritional adequacy and health risks associated with his diet. And they were not alerted to Jackson's allegation that the prison treated diet accommodations differently based on religion. Thus, Jackson did not properly exhaust the administrative remedies available to him as to his Eighth Amendment cruel and unusual punishment claim and his Fourteenth Amendment equal protection claim. I must grant the defendants' motion for summary judgment as to those claims for failure to exhaust.

Thus, the only remaining claims exhausted by grievance 5826 are Jackson's First Amendment and RLUIPA claims.

**B. Eleventh Amendment Immunity**

The defendants argue the Eleventh Amendment bars Jackson's claims for monetary damages against McDaniel, Neven, Nash, Baker, Byrne, and Wilson in their official capacities because they are state officials and Nevada has not waived its Eleventh Amendment immunity. Jackson did not respond to this argument.

States and entities that are considered "arms of the State for Eleventh Amendment purposes" are not "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70 (1989) (quotations omitted). Because a suit against a state official in his official capacity is equivalent to a suit against the state itself, the Eleventh Amendment bars suits against state officials in their official capacities. *Id.* at 70-71. The only exception is a suit for prospective injunctive relief. *Doe v. Lawrence Livermore Natl Lab.*, 131 F.3d 836, 839 (9th Cir.1997). The Eleventh Amendment does not bar claims against state officials in their personal capacities. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir.1992).

Jackson sued McDaniel, Neven, Nash, Baker, Byrne, and Wilson in their official capacities. ECF No. 7 at 2-3. Because the Eleventh Amendment bars Jackson's claims for

damages against these defendants in their official capacities, they are entitled to summary

judgment as to the First Amendment claim for damages.  However, Jackson can still seek

damages from the defendants in their individual capacities and injunctive relief against them in

their official capacities.[2]

### C. Personal Participation under 42 U.S.C. § 1983

A defendant is liable under § 1983 when he personally participates in the constitutional

deprivation. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).  "A supervisor is only liable for

constitutional violations of his subordinates if the supervisor participated in or directed the

violations, or knew of the violations and failed to act to prevent them.  There is no respondeat

superior liability under [§]1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see*

*also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable

to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution.").

The Ninth Circuit has held that a defendant could personally participate in a violation by

denying a grievance.  In *Colwell v. Bannister*, an inmate sued NDOC officials and supervisory

medical personnel, arguing they were deliberately indifferent to his serious medical needs by

denying his requests to have surgery to restore his vision. 763 F.3d 1060, 1065 (9th Cir. 2014).

One of the doctors denied the inmate's second level grievance based on an administrative policy

of denying cataract surgery as long as a prisoner has one good eye, not based on an individual

medical determination.  The Ninth Circuit held that a reasonable jury could find the doctor

personally participated in refusing treatment with deliberate indifference. *Id.* at 1070.  And in

---

[2] RLUIPA allows plaintiffs to pursue only injunctive relief. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) ("[RLUIPA] does not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that the funds are received.").

*Snow v. McDaniel*, the Ninth Circuit denied summary judgment to the prison Warden and Associate Warden because the prisoner sufficiently demonstrated that they were aware, through the grievance process and other documentation, that the prisoner was in pain and needed surgery and they "failed to act to prevent further harm." 681 F.3d 978, 989 (9th Cir. 2012), *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076, 1083-84 (9th Cir. 2014).

Consistent with *Colwell*, other courts have held that merely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation. *See Stewart v. Warner*, No. C15-5243 RBL-KLS, 2016 WL 1104893, at *5 (W.D. Wash. Feb. 29, 2016), *report and recommendation adopted*, No. C15-5243 RBL-KLS, 2016 WL 1089974 (W.D. Wash. Mar. 21, 2016) (holding that nurses who had reviewed and denied the plaintiff's grievances did not personally participate in alleged Eighth Amendment violations because they did not have decision-making authority over the plaintiff's care); *see also May v. Williams*, No. 2:10–cv–576–GMN–LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) (finding that merely denying grievances is not enough to establish a constitutional claim).

The defendants contend they were not involved in the June 2015 decision to deny Jackson's request for the religious common fare diet, so they did not personally participate in any alleged constitutional violation. ECF No. 91 at 13. They argue that the persons responsible for denying Jackson's religious accommodation—Chaplain Calderin and Associate Warden Stroud—are not named defendants. *Id.* at 14. Jackson responds that all the defendants personally participated either through the grievance process or by having positions responsible for the operation and management of religious diet accommodations. ECF No. 98 at 5-10, 15-16.

/ / / /

*1. E.K. McDaniel*

At all relevant times, McDaniel was a deputy director at NDOC. ECF No. 92 at 122. Viewing the evidence in the light most favorable to Jackson, McDaniel is entitled to judgment as a matter of law. Jackson fails to demonstrate how McDaniel personally participated in depriving Jackson of his rights. Jackson's only allegation against McDaniel is that he signed HDSP OP 809, the regulation regarding the common fare/religious diet procedure, and that he likely signed a similar procedure for ESP. ECF No. 98 at 10. Jackson has not presented evidence that McDaniel was aware of Jackson's grievance or personally participated in denying him a vegan diet. Nothing in the record shows McDaniel was involved in determining whether Jackson qualified for a religious diet or that he participated in the denial of Jackson's grievances. Thus, to the extent Jackson intended to sue McDaniel in his individual capacity, McDaniel is entitled to summary judgment in his individual capacity.[3]

McDaniel is also entitled to summary judgment in his official capacity. "A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citations omitted). An official is the proper defendant when "he would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to the plaintiff's claims." *Colwell*, 763 F.3d at 1070 (quotation and citation omitted).

---

[3] In his complaint, Jackson placed a checkmark only next to official capacity for McDaniel. *See* ECF No. 7 at 2.

McDaniel is no longer at NDOC, so he would not be able to carry out any relief obtained. And substituting his replacement under Federal Rule of Civil Procedure 25(d) would not be proper because Jackson has not established that McDaniel or his replacement would have any authority at HDSP to implement injunctive relief obtained in this action. Accordingly, I grant summary judgment as to McDaniel in his individual and official capacities.

### 2. Duane Wilson

At all relevant times, Duane Wilson was food services manager at HDSP. ECF No. 92 at 203. Viewing the evidence in the light most favorable to Jackson, Wilson is entitled to judgment as a matter of law. Wilson responded to Jackson's inmate request form by stating that HDSP did not have a vegan diet and that Jackson needed to request a no-meat diet through Associate Warden Stroud. Even if Wilson was aware that Jackson was seeking a religious accommodation diet, there is no evidence that Wilson had the authority to change Jackson's diet. Without that authority, his mere denial of the grievance, alone, is insufficient to establish personal participation. *See Stewart*, 2016 WL 1104893, at *5.

Jackson notes that after this lawsuit was filed, Wilson participated in communications regarding the special diet Jackson was placed on and whether NDOC could provide an approved vegan diet. ECF No. 94-30 at 2. But that communication does not show that Wilson has any decision-making authority over Jackson's diet or HDSP's treatment of religious accommodation diets.[4] Because Wilson merely responded to a grievance that directed Jackson to seek an accommodation through AW Stroud, no reasonable jury could find that he personally

---

[4] For the same reason, Wilson is not a proper defendant for injunctive relief. *Colwell*, 763 F.3d at 1070 (quotation and citation omitted).

participated in the alleged free exercise violations.  I therefore grant defendant Wilson summary judgment in his individual and official capacities.

### 3. Renee Baker and Harold Byrne

At all relevant times, Renee Baker was Warden of ESP and Harold Byrne was Associate Warden at ESP. ECF No. 92 at 118, 125.  Viewing the evidence in the light most favorable to Jackson, Baker and Byrne are entitled to judgment as a matter of law.  As ESP officials, Baker and Byrne did not participate in grievance 5826, nor could they have prevented the harm if they had known about it because the alleged harm occurred at HDSP.[5]  Accordingly, I grant summary judgment as to defendants Baker and Byrne in their individual and official capacities.

### 4. Dwight Neven and Jennifer Nash

At all relevant times, Dwight Neven served as Warden of HDSP. ECF No. 92 at 129. Jennifer Nash was Associate Warden of HDSP. *Id.* at 6.  Viewing the evidence in the light most favorable to Jackson, Neven and Nash are entitled to summary judgment in their individual capacities.  Apart from the grievances that were not properly exhausted, Nash responded to one of Jackson's inmate request forms stating that the common fare diet was not vegan, and that Jackson had not declared a religion upon intake so his request for common fare would have been denied. *Id.* at 8.  Neven was Warden at HDSP when Jackson returned in January 2016 and submitted grievance 5826 related to his religious diet.  As the Warden, Neven bears the ultimate responsibility for monitoring regulations regarding a religious/spiritual diet.  However, there is no evidence to suggest that Nash or Neven were aware of grievance 5826, which only non-defendant HDSP staff responded to.  Because they did not personally participate in denying that

---

[5] For the same reason, Baker and Byrne are not proper defendants for injunctive relief because they have no authority to implement any relief at HDSP. *Colwell*, 763 F.3d at 1070 (quotation and citation omitted).

grievance, and because they did not know of Jackson's grievance and fail to prevent further harm, no reasonable jury could find that Neven and Nash personally participated in depriving Jackson of his rights. I therefore grant summary judgment as to defendants Nash and Neven in their individual capacities.

However, Nash and Neven, in their official capacities, may be appropriate defendants for Jackson's claims for injunctive relief. *See Hartmann*, 707 F.3d at 1127; *see also Colwell*, 763 F.3d at 1070. The evidence suggests that Nash, in her official capacity as an Associate Warden, has authority to direct HDSP staff to create a diet accommodation. *See, e.g.,* ECF No. 94-25 at 2 ("I have been directed by A.W. Nash to continue to feed I/Jackson . . . his prescribed Vegan diet."). And Neven, as the Warden, "is responsible for the implementation and monitoring of regulations regarding the inmate Common Fare, Religious/Spiritual diet." ECF No. 92 at 165. Although Neven is no longer Warden at HDSP, his successor may be substituted in as a party under Federal Rule of Civil Procedure 25(d). Thus, I deny summary judgment as to defendant Nash in her official capacity. And I deny summary judgment as to defendant Neven's successor in his or her official capacity.

### D. Injunctive Relief

The only remaining issue is whether Jackson is entitled to injunctive relief against Nash and Neven's successor in their official capacities. The defendants argue that his requests for injunctive relief are moot because they have now provided him with the "Common Fare Vegetarian or Hindu diet" which satisfies the vegan diet requirements. ECF No. 91 at 24. They also argue that Jackson failed to show, either by amending his complaint or otherwise, that this new diet imposes a substantial burden on his ability to exercise his religious beliefs. *Id.* at 25. Jackson argues the diet was created in an attempt to resolve this litigation and his claims are not

moot because the defendants have not shown he would continue to receive this diet or that the violation would not occur again. ECF No. 98 at 20-21. He argues the defendants' denial of his request for a vegan diet substantially burdened his religious exercise and the defendants did not show that their decision was reasonably related to a legitimate penological interest. *Id.* at 22-23.

### 1. Mootness

Mootness is a question of law. *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 586 U.S. 85, 90 (2013) (quoting *Murphey v. Hunt*, 455 U.S. 478, 481 (1982)). "It is well-established, however, that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case unless it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Fikre*, 904 F.3d at 1037 (quotation omitted). Thus, "the standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).

The defendants have not sufficiently demonstrated that by placing Jackson on the common fare vegetarian diet with allergy restrictions they have mooted Jackson's claims. First, it is unclear whether this diet in fact complies with a nutritionally adequate vegan diet. And second, nothing prevents the defendants from stopping the accommodation in the future. Because a violation can reasonably recur, Jackson's claims for injunctive relief are not moot.

*2. Merits of Jackson's Free Exercise Claims*

a. First Amendment Free Exercise

Prisoners retain their First Amendment rights, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). To be afforded constitutional protection, courts look to whether an inmate's belief is "sincerely held and religious in nature." *Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008).

But limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. *Id.*; *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (Prisoners' rights under the Free Exercise Clause are limited by "institutional objectives and the loss of freedom concomitant with incarceration."). Prison regulations alleged to infringe on the right to religious exercise must be evaluated under the "reasonableness" test set forth in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987). *O'Lone*, 482 U.S. at 349. *Turner* set forth four factors to determine whether a prison regulation is reasonable: (1) there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it; (2) whether alternative means of exercising the right on which the regulation impinges remain open to inmates; (3) the impact that accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives. *Allen v. Toombs*, 827 F.2d 563, 567 (9th Cir. 1987) (citing *Turner*, 482 U.S. at 89–91).

b. RLUIPA

Under RLUIPA, the government may not impose a substantial burden on the religious exercise of an inmate unless that burden furthers a "compelling governmental interest" and does

so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)–(2). This "compelling government interest" and "least restrictive means" test replaced *Turner v. Safley*'s "legitimate penological interest test." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)). RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Id.* at 995 (citation omitted). "RLUIPA defines religious exercise as 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Shakur*, 514 F.3d at 888 (quoting § 2000cc–5(7)(A)).

The inmate bears the first task of establishing that his religious exercise has been substantially burdened. *Warsoldier*, 418 F.3d at 994. The government then must prove that the burden both furthers a compelling governmental interest and is the least restrictive means of doing so. *Id.* at 995.

c. Analysis

Jackson argues in his motion for summary judgment that denying him a vegan diet interferes with, and substantially burdens, his right to religious exercise because he "is forced to choose between complying with his faith and going hungry, or supplement his diet with purchases from the commissary." ECF No. 93 at 8. He argues that his need for a vegan diet is a sincerely held religious belief that has been well documented since he entered HDSP. *Id.* The defendants respond that Jackson has not shown that the alternative no-meat diet is incompatible with the tenets of the Moorish Science Temple of America or that Moorish Scientists require a vegan diet. ECF No. 97 at 11. They argue that Jackson fails to address why his current diet does not comply with his religious beliefs. *Id.* And they argue that they did not personally participate in the decision to deprive him of his rights. *Id.* at 12.

21

Viewing the evidence in the light most favorable to the defendants, Jackson is entitled to summary judgment as to his First Amendment and RLUIPA claims. Jackson has shown that he sought to be placed on a vegan diet based on sincerely held religious beliefs, that the denial of this accommodation substantially burdened his right to free exercise of his religion, and that the defendants have no justifiable reason for denying his request.

The defendants present no argument or evidence that Jackson's beliefs are not sincerely held. And they provide no evidence that their denial of Jackson's diet was reasonable under the *Turner* factors or that, pursuant to RLUIPA, there was a compelling government interest to deny the request. Instead, they argue incorrectly that Jackson was required to show evidence that Moorish Scientists require a vegan diet. This is not the proper standard. Under the First Amendment, Jackson must show only that he has a sincerely held religious belief that requires him to seek an accommodation, not that all Moorish Scientists require a vegan diet as a tenet of their religion. And likewise, under RLUIPA, Jackson need only show that he is exercising his right to religion, regardless of whether such exercise is central to a system of religious belief. No reasonable jury could find that Jackson's rights were not violated, and Jackson is entitled to summary judgment as to his First Amendment and RLUIPA claims for injunctive relief.

However, the injunctive relief Jackson requests is overly broad. *See* ECF No. 7 at 14 ("Issue an injunction ordering defendants . . . to: 1) immediately develop a vegan common fare meal with an adequate source of non-animal protein and plant based fats including beans, lentils, chickpeas, ground nuts and hummus and pita bread lunch option; 2) immediately place plaintiff on the vegan common fare meal mentioned supra." ). I "shall not grant or approve any prospective relief unless . . . such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the

violation of the Federal right." 18 U.S.C. § 3626a(1)(A).  I order the parties to confer about the scope of an appropriate injunction.  Should the parties not reach an agreement, they should submit supplemental briefing on the matter.

## III. CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 91) is GRANTED in part.**  The defendants are entitled to summary judgment with respect to Jackson's Eighth and Fourteenth Amendment claims.  The defendants are also entitled to summary judgment as to Jackson's First Amendment claim for damages.  The clerk of the court is instructed to dismiss defendants McDaniel, Wilson, Baker, and Byrne from the case.  The clerk of the court is also instructed to dismiss defendants Nash and Neven in their individual capacities.

I FURTHER ORDER the parties to file a stipulation to amend the caption and substitute defendant Neven for his successor in his or her official capacity.

I FURTHER ORDER that plaintiff Robert Jackson's motion for summary judgment **(ECF No. 93) is GRANTED in part.**  Jackson is entitled to summary judgment as to his First Amendment and RLUIPA claims for injunctive relief against defendants Nash and Neven's successor in their official capacities.

I FURTHER ORDER the parties to confer about the appropriate injunctive relief.  If the parties cannot agree within 21 days, Jackson shall submit a brief with his proposed relief within 42 days of the entry of this order.  The remaining defendants will submit their response within 21 days of Jackson's brief.  There will be no further briefing absent court order.

DATED this 3rd day of December, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

23